IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DIETGOAL INNOVATIONS LLC, | § | |
| | § | Hon. Caroline Craven |
| Plaintiff, | § | |
| | § | Civil Action No. 2:12-cv-00327-MHS-CMC |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| BRAVO MEDIA, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT BRAVO MEDIA, LLC'S MOTION TO TRANSFER
VENUE TO THE SOUTHERN DISTRICT OF NEW YORK**

Pursuant to 28 U.S.C. § 1404, Defendant Bravo Media, LLC ("Bravo") respectfully moves this Court to transfer this action to the Southern District of New York for the convenience of the witnesses and parties and in the interest of justice.

## I.  INTRODUCTION

This case against Bravo should be transferred because it has absolutely "no relevant factual connection to the Eastern District of Texas." *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Instead, it is in or near the Southern District of New York where both plaintiff and defendant are in reality located, where the locus of the operative facts alleged against Bravo exists, and where the relevant documents, evidence, and witnesses are located. Simply put, there is no good reason to keep this case in the Eastern District of Texas.

The key facts that render the Southern District of New York "clearly more convenient" than this District include:

- Bravo, its witnesses, and its documents are all located in New York City;

- All the known non-party witnesses are located in or near New York City, including the non-party developer and its witnesses involved in the design of the accused Bravo technology, the former Bravo employees who worked with that developer to integrate the technology into Bravo's website, prior art witnesses, and the named inventor and prosecuting attorney of the asserted patent;

- Plaintiff's owners both reside in New York City;

- Plaintiff, while claiming to be a Texas entity located in Austin, has no actual connection to Texas other than litigation of the asserted patent. DietGoal was formed by its two New York owners just one day before filing its first lawsuit, has no business operations in Texas, and has no offices or employees in Texas;

- There are **no** known party or non-party witnesses or evidence in this District; and

- The fact that Plaintiff has filed other cases in this District, all of which are still in their infancy, cannot trump all of the factors that point decisively in favor of transfer.

The Federal Circuit has made clear that, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the

1

plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). That is the case here. Because all relevant factors governing transfer weigh strongly in favor of transfer and no such factors favor remaining in this District, Bravo's motion to transfer should be granted.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   Plaintiff DietGoal Has No Apparent Connection To This District, But Has Significant Connections to and Witnesses in New York

Plaintiff DietGoal Innovations LLC ("Plaintiff" or "DietGoal") claims that it is a Texas company based in Austin, Texas (which is in the Western District of Texas) and that it is the "exclusive licensee of the '516 patent." (Compl. ¶¶ 1, 8 (Dkt. No. 1).) However, DietGoal is actually much more a New York company than a Texas one. It was incorporated in Texas just one day before it filed its first lawsuit. (Decl. of Chris Carraway ("Carraway Decl.") ¶ 2, Ex. A.), it has no known employees in the State of Texas, and it conducts no known business in Texas, other than filing these lawsuits. (*Id.*, ¶ 5 & Ex. D.) Its corporate filing does not list a Texas address for the business but instead provides an Austin address solely for a registered agent. DietGoal's management instead appears to take place in New York City; its corporate filing lists DietGoal's only managing members as lawyers Daniel Mitry and Timothy Salmon, both of whom reside in New York City. (*Id.*, ¶¶ 2-4, 12-13, Exs. A-C, K-L.) No known connection exists between the State of Texas and DietGoal's two New York-based principals. (*Id.*, ¶ 5.)

Plaintiff has 15 pending actions in this District, all asserting infringement of U.S. Patent No. 6,585,516 (the "'516 patent"). The first, against 47 defendants, was filed on September 15, 2011, before the America Invents Act ("AIA") went into effect. *See DietGoal Innovations LLC v. Arby's Restaurant Group, Inc.*, Case No. 2:11-cv-00418-MHS-CMC (E.D. Tex.) (hereafter the "First Case"). Defendants in that action recently answered and the scheduling conference just occurred on August

2

29, 2012. Further, motions to transfer were filed by nearly a dozen different defendants.[1] Several of the transfer motions in the First Case were brought by New York-headquartered defendants seeking transfer to the Southern District of New York. There have been no substantive actions taken in the First Case.

In 2012, after the AIA was in effect, DietGoal attempted to add over a dozen new defendants (including Bravo) to its First Case, but the Court refused to permit this. (*Id.*, Dkt. No. 445.) DietGoal then proceeded to file new separate lawsuits against those additional defendants, including Bravo. (*See* Case Nos. 2:12-cv-00327 to 2:12-cv-00340.) The Court has not issued any substantive decisions or conducted any hearings in any of these new actions. Several of these recent New York-headquartered defendants (including Time Inc. and Scripps) have already sought transfer of their cases to the Southern District of New York.

DietGoal has had ample opportunity to identify any connection to this District in the many oppositions it filed to the transfer motions in the First Case and later cases. Indeed, in those oppositions, DietGoal did not contest the facts discussed in the paragraphs above and did not identify any connection with or evidence in this District. (*E.g.*, First Case, Dkt. Nos. 333-336.)

**B. Defendant Bravo, Its Witnesses, And Its Documents Are In The Southern District Of New York**

Like Plaintiff, Defendant Bravo also has substantial connections to the Southern District of New York. Bravo's business includes operating the Bravo cable television channel and the website located at www.bravotv.com. (Declaration of Lisa Hsia ("Hsia Decl."), ¶ 2.) Bravo's principal place of business is in New York City, and its documents and witnesses are located there. (*Id.*, ¶¶ 2, 4-5.) Bravo's New York-based employees who likely have technical, marketing, or financial information regarding the Bravo website that is accused in this case include Suejin Yang, Matt Witherow, James

---

[1] Pending motions to transfer in the First Case are Docket Nos. 230, 283, 287, 292, 294, 296, 307, 321, 373, 520.

3

Napolitano, Jamie Cutburth, Holly Tang, and Lisa Hsia. (*Id.*, ¶ 4.) In contrast, Bravo has no employees, no witnesses, and no documents relating to the accused Bravo website in the Eastern District of Texas. (*Id.*, ¶ 6.)

### C. Nearly All Known Non-Party Witnesses Are Located In Or Near The Southern District Of New York

There are also many **non-party** witnesses located in or close to New York:

***Developers of the Accused Bravo Website Feature***: DietGoal alleges that the recipe search feature on the Bravo website (http://bravotv.com/foodies/recipes) infringes the '516 patent. (Complaint, ¶ 9.) That recipe search feature was not developed by Bravo but instead by an unrelated company called Cookstr, which like Bravo is located in New York City. (Hsia Decl., ¶ 3.) Cookstr's witnesses who have knowledge of the functionality of the accused recipe search feature include Art Chang, who also is located in New York City. (*Id.*, ¶ 3, Ex. 1-2.) Further, some of the Bravo employees who worked with Cookstr to bring its technology to the Bravo website, including Mari Ghuneim, who was in charge of the website at that time, are no longer employed by Bravo but are still located in New York City. (*Id.*, ¶ 3, Ex. 3.)

***Named Inventor, His Company, and Prosecuting Attorney***: Oliver Alabaster, the named inventor of the '516 patent, and his company, DietFit, which purports to practice the '516 patent, are located in Alexandria, Virginia. (Carraway Decl., ¶¶ 7, 9-10, Exs. F, H, I.) Steven B. Kelber, the attorney who prosecuted the patent, is located in Bethesda, Maryland. (*Id.*, ¶ 11, Ex. J.) Both Alexandria and Bethesda are less than 250 miles from New York City but more than 1,200 miles from the Eastern District of Texas. (*Id.*)

***Prior Art Witnesses***: Two of the eleven U.S. patent and patent application cited references on the '516 patent list inventors located in New York State. (Carraway Decl., ¶¶ 15, 17, Exs. N, P.) Two other cited prior art patents list inventors as located in Vermont and Virginia. (*Id.*, ¶¶ 16, 20, Exs. O, S, T.) Of the remaining six cited patents, three list inventors in Japan, two list inventors in

4

California and one lists an inventor in Arizona. (*Id.*, ¶¶ 14, 18-19, 22-24, Exs. M, Q-R, U-W.) None of the cited prior art lists a single inventor in Texas. (*Id.*) Additional prior art witnesses likely will be in New York. For example, Bravo is aware of a prior art recipe finder on the 2000 version of Conde Nast's Epicurious.com website, which will almost certainly be supported by evidence and witnesses located in New York. (*Id.*, ¶ 25, Exs. X, Y.)

### III.   THE CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

The venue transfer statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) gives courts the discretion, and in some cases the duty, to transfer an action to a forum if it is "clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) ("*Volkswagen II*"); *Droplets, Inc. v. E*Trade* (*Droplets I*), 2012 WL 3133398, at *2 (E.D. Tex. Mar. 5, 2012) (Craven, M.J.) (granting transfer).[2] The party seeking transfer has the burden to show "good cause" for transfer. *Volkswagen II*, 545 F.3d at 315.

The preliminary inquiry under Section 1404(a) is whether the case could have been filed in the district to which transfer is sought. *Volkswagen II*, 545 F.3d at 312. There can be no dispute that this case could have been brought in the Southern District of New York: Bravo is headquartered there, that district has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), and venue is proper there.

Once that threshold inquiry is met, the court must consider the convenience of the parties and witnesses in both forums. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). "A convenience determination consists of balancing the conveniences and inconveniences resulting from the plaintiff's choice of venue, in comparison with those of the proposed venue."

---

[2] Copies of Westlaw and slip opinions are attached as Exhibit Z to the Carraway Declaration.

*Droplets I*, 2012 WL 3133398, at *2. Under Fifth Circuit law, this balancing includes examining "public" and "private" factors relating to the convenience of parties and witnesses, as well as the interest of particular venues in hearing the case, to determine whether the transferee venue is "clearly more convenient than the venue chosen by the plaintiff." *Volkswagen II*, 545 F.3d at 315.

None of the factors is dispositive, and so no single factor can trump all the others. *Volkswagen I*, 371 F.3d at 203. Instead, the analysis of the factors requires "individualized, case-by-case consideration of convenience and fairness." *In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (internal quotation omitted). Where analysis of these factors shows that another venue is "clearly more convenient," as is the case here, an action not only can be transferred, but also should. *See In re TS Tech USA*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *Volkswagen II*, 545 F.3d at 315.

### A. The "Private" Interest Factors Strongly Favor Transfer

The "private interest" factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203 (internal quotation omitted). This District contains no party, no identified witness, and no known source of proof. In contrast, many witnesses (both party and non-party) and all known documents are located in or near the Southern District of New York. Thus, all of these factors strongly favor a transfer.

#### 1. The Southern District Of New York Is A More Convenient Forum For Both Party and Non-Party Witnesses

The cost of attendance for willing witnesses strongly favors transfer because New York is a far more convenient forum for both non-party and party witnesses. "The convenience of witnesses is **probably the single most important factor** in a transfer analysis." *Genentech*, 566 F.3d at 1342 (citation omitted) (emphasis added). The "[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional

6

travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *TS Tech*, 551 F.3d at 1320. As a result, the Fifth Circuit has adopted a "100-mile" rule, pursuant to which "when the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (internal quotation omitted). For this factor to favor transfer, the proposed venue need not be more convenient for all the witnesses. Instead, "this factor can favor transfer 'when a substantial number of material witnesses reside in the transferee venue' and no witnesses reside in plaintiff's chosen venue." *Droplets I*, 2012 WL 3133398, at *4 (quoting *Genentech*, 566 F.3d at 1345).

That is the case here. Many witnesses reside in and near the Southern District of New York, while no known witnesses reside in or near the Eastern District of Texas.

***Party Witnesses***: Bravo is headquartered in the Southern District of New York, it manages the development and operation of the accused website there, and its employee witnesses (including Suejin Yang, Matt Witherow, James Napolitano, Jamie Cutburth, Holly Tang, and Lisa Hsia) all are located there. (Hsia Decl., ¶¶ 2, 4, 5.). In contrast, Bravo has no employees or documents regarding the accused website in Texas. (*Id.*, ¶ 7.) Plaintiff DietGoal's witnesses likewise appear to be in New York City. While DietGoal was registered as a Texas company, its only managing members are New York residents Daniel Mitry and Timothy Salmon. (Carraway Decl., ¶¶ 12-13, Exs. K-L.) DietGoal has no other known employees, and it appears that DietGoal has no Texas witnesses (*Id.,* ¶ 5.)

In sum, relevant party witnesses include at least the following located in New York City:

| Party Witness | Location | Knowledge |
|---|---|---|
| Daniel Mitry | New York City | Owner of DietGoal |
| Timothy Salmon | New York City | Owner of DietGoal |
| Lisa Hsia | New York City | Financial information and management of the Bravo Website |
| Suejin Yang | New York City | Management and features of the Bravo Website |
| Matt Witherow | New York City | Technical operations of the Bravo Website |

| | | |
|---|---|---|
| James Napolitano | New York City | Technical operations of the Bravo Website |
| Jamie Cutburth | New York City | Marketing of the Bravo Website |
| Holly Tang | New York City | Financial information regarding the Bravo Website |

***Non-Party Witnesses***. As detailed in the factual background above with citations, numerous non-party witnesses are likewise located in or near New York City, including:

| Non-Party Witness | Location | Knowledge |
|---|---|---|
| Cookstr | New York City | Developer of the accused recipe search feature on the Bravo website |
| Art Chang | New York City | CEO of Cookstr, developer of the accused recipe search feature on the Bravo website |
| Mari Ghuneim | New York City | Former Bravo employee who was in charge of Bravotv.com website during integration of Cookstr recipe search technology |
| Oliver Alabaster | Alexandria, VA | Named inventor on the asserted '516 patent |
| DietFit | Alexandria, VA | Named inventor's company that identifies its products as being built using the '516 patent |
| Steven Kelber | Bethesda, MD | Prosecuting attorney of the '516 patent |
| Conde Nast employees | New York City | Knowledge of prior art recipe website Epicurious.com |
| Darwin Dennison | Amherst, NY | Named inventor on U.S. Patent No. 5,412,560 (cited as prior art in asserted patent) |
| Thomas Neuhaus | Trumansburg, NY | Named inventor on U.S. Patent No. 5,832,446 (cited as prior art in asserted patent) |
| Nina J. Kuch | Shelburne, VT | Named inventor on U.S. Patent No. 5,454721 (cited as prior art in asserted patent) |
| Jeffery R. Barnett | McLean, VA | Named inventor on U.S. Patent No. 6,381,614 (cited as prior art in asserted patent) |
| Katherine Barnett | McLean, VA | Named inventor on U.S. Patent No. 6,381,614 (cited as prior art in asserted patent) |

In contrast, Bravo is not aware of any non-party witnesses in Texas, including anyone with knowledge of the accused website and its features, the patent, the prior art, or any other information material to this lawsuit. Because no known witness is located in this District, and the majority of identified witnesses are located in the Southern District of New York or nearby, the convenience of the witnesses, "probably the single most important factor in a transfer analysis," overwhelmingly favors transfer to New York. *Genentech*, 566 F. 3d at 1342.

8

## 2. The Overwhelming Majority Of The Potential Evidence Is Located In The Southern District Of New York

The sources of proof likewise strongly favor transfer because almost all of the relevant documentary evidence is in the Southern District of New York while no known documentary evidence originates in the Eastern District of Texas. In patent cases, "the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. Thus, "the place where defendant's documents are kept weighs in favor of transfer to that location." *Id.*

In the present action, that location is the Southern District of New York, because not only are Bravo's witnesses located in New York, as discussed above, but so are its documents. (Hsia Decl., ¶ 5.) Likewise, the documents of Cookstr, the non-party developer of the accused recipe search technology on Bravo's website, are almost certainly likewise located in New York, where Cookstr is headquartered. (*Id.*, ¶ 3.) In contrast, none of Bravo's documents are located in Texas, and Bravo is not aware of any other relevant documents whatsoever that originate in or are kept in the Eastern District of Texas by anyone. (*Id.*, ¶ 7.) Thus, Bravo and others would face unnecessary burdens transporting their documents to the Eastern District of Texas, but would not face those burdens if the case is transferred.

In addition, because DietGoal is a company owned and apparently managed in New York, its documents are likely located in New York as well. Finally, documents of the named inventor, his company, and his prosecuting attorney are apparently located in the Washington, DC area, close to New York but far from this District.

To the extent that DietGoal has any documents located in Texas, those documents are not entitled to any significant weight for this factor. As the Federal Circuit has held, most of the relevant documents come from the accused infringer, not the patentee. *Genentech*, 566 F.3d at 1345. Furthermore, because DietGoal was incorporated in Texas by two New York City individuals just before it filed its first action, whatever documents it has in this District must have been transferred

9

there from New York only in anticipation of litigation, and, therefore, should not be considered "Texas" documents for purposes of a transfer analysis. *Hoffmann-La Roche*, 587 F.3d at 1336-37 (holding that documents transferred in anticipation of litigation are not entitled to any weight in a transfer analysis).

In sum, because the overwhelming majority of the relevant documentary evidence is located in New York and no known evidence is located in this District, this factor strongly favors transfer. *See, e.g.*, *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (sources of proof factor favored transfer when it appeared that a significant portion of the evidence would be located in the proposed transferee district); *Genentech*, 566 F.3d at 1345 (same).

### 3. The Southern District Of New York Has Absolute Subpoena Power Over Many Potential Witnesses

The ability of the court to compel witnesses for deposition and trial supports transfer to the Southern District of New York. Notably, no known non-party witnesses reside in this District or anywhere near it. As a result, this Court cannot compel the attendance of a single known non-party witness. In contrast, the Southern District of New York can compel attendance of many non-party witnesses, including the New York non-party witnesses identified in the chart on page 8 above. Moreover, given that Bravo is based in New York and DietGoal's principals also reside there, any additional non-party witnesses who might be identified are far more likely to live in New York than in the Eastern District of Texas. For all these reasons, this factor also tips heavily in favor of transfer. *See Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").

### 4. Judicial Economy And Other Practical Problems Do Not Weigh Against Transfer

Judicial economy likewise does not favor this District's retention of this case. The sole conceivable connection between this case and the Eastern District of Texas is the existence of a

10

number of other cases filed in the past year by DietGoal against many different companies, almost all of them headquartered outside of Texas. None of those suits have progressed beyond the initial pleading stage, and the most advanced of these cases only just had its scheduling conference. Thus, this Court has not construed the claims of the '516 patent and has not gained any other substantive knowledge or experience regarding this patent. Further, many of the defendants have likewise moved to transfer, including a number of other New York-based companies which also have sought transfer to the Southern District of New York.

In situations like this one in which no case involving the patent has progressed to claim construction, the existence of other cases or defendants in this District cannot trump the other factors favoring transfer. "To interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)." *In re Verizon*, 635 F.3d 559, 562 (Fed. Cir. 2011) (ordering transfer despite district court having previously construed asserted patent). As this Court recently noted, "[t]he Federal Circuit has 'considered and rejected arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue.' *Droplets I*, 2012 WL 3133398, at *7 (*quoting In re Morgan Stanley*, 417 Fed. App'x 947, 949 (Fed. Cir. Apr. 6, 2011)). For example, in the *Droplets* cases, this Court transferred some defendants to New York and some defendants to California, but retained others in the Eastern District of Texas, carefully applying the convenience factors to each defendant and holding: "In sum, considerations of judicial economy and court congestion are outweighed by the location of sources of proof, the availability of compulsory

process, and the convenience of witnesses." *See Droplets, Inc. v. eBay, Inc.* Case No. 2:12-cv-389-MHS-CMC, Dkt. No. 1, slip op. at 14 (E.D. Tex. July 2, 2012) (Craven, M.J.).[3]

Here, as in *Droplets*, the existence of other cases regarding the same patent in this District cannot trump the compelling case for transfer that flows from applying all of the other factors, particularly here where the other cases are all in their infancy.

### B. The "Public" Interest Factors Strongly Favor Transfer

The "public interest" factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems with conflicts of laws or in the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (internal quotation omitted). Because the Southern District of New York has a significant localized interest in the facts of this case, while this District has none, and because the other factors are neutral, the public interest factors strongly favor transfer.

#### 1. New York Has A Strong Localized Interest In This Case, While This District Does Not

The public interest factor in having the "localized interest" decided in the "local" venue heavily weighs in favor of transfer here. The Fifth Circuit has explained that "[j]ury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Thus, in weighing the relative "localized interests" in the transferee and transferor forum that are implied by the litigation, courts consider whether the transferee or transferor forum "has an interest—that is, a stake in—the resolution of [the] controversy," over and

---

[3] *See also H-W Tech., L.C. v. Apple, Inc.*, Case No. 3:11-cv-651-G-BH, Dkt. No. 369, slip op. at 20-21 (N.D. Tex. July 5, 2012) (severing case and transferring some defendants to California and finding that judicial economy did not trump other factors prior to claim construction); *Signal Tech. LLC v. Analog Devices, Inc.*, Case No. 11-1073-RGA, Dkt. No. 23, slip op. at 7 (D. Del. April 3, 2012) (transferring one case based on convenience factors despite presence of another case before same judge involving same patent because cases were still "at their inception").

above the interest of any other forum within the United States. *Volkswagen II*, 545 F.3d at 318. In analyzing this factor, courts consider the "factual connection" that a case has with the respective transferee and transferor venues. *Volkswagen I*, 371 F.3d at 206.

The Southern District of New York has a substantial factual connection to this case because this litigation involves local entities and people, both for DietGoal and Bravo. Bravo is headquartered in New York, its accused website is managed by New York employees, and its accused technology was developed by a New York non-party. (Hsia Decl., ¶¶ 2-4). Likewise, if DietGoal can be said to be located anywhere, it is in New York, where its owners live and presumably direct its litigation business. Thus, this dispute is in fact one between two New York-headquartered companies, and New York has an interest in resolving issues relating to the liability and damages regarding these local entities. Finally, the majority of the relevant sources of proof, including the majority of likely witnesses, are in New York, giving the Southern District of New York a compelling interest in the outcome of this litigation.

In contrast, the Eastern District of Texas has no real interest in the case, as no parties maintain any headquarters, employees, or facilities here, no development work by any party occurred here, and no prior art work or witnesses are located here. DietGoal cannot rely on its recent incorporation in Texas to manufacture a "local interest."[4] DietGoal was formed a day before it filed its First Case and still—almost a year later—does not appear to have any real presence in Texas. It appears to have no office or employees in Texas and no actual business to speak of beyond prosecuting its lawsuits. (Carraway Decl., ¶ 5.) Even its pro forma presence—the address of its

---

[4] Nor can Plaintiff rely on the mere fact that the allegedly infringing website is accessible in Texas (along with every other district in the United States). When products are sold or websites are available nationwide, including in the Eastern District of Texas, the citizens of the Eastern District of Texas have no more or less of a meaningful connection to the case than any other venue. *TS Tech*, 551 F.3d at 1321.

registered agent—is in Austin, Texas, which is in the Western District of Texas. Under these circumstances, DietGoal's incorporation in Texas is clearly "recent, ephemeral, and an artifact of litigation," and, therefore, its choice of venue is not entitled to any deference. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *see also, e.g., In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (ignoring location of plaintiff in transfer analysis because it had no Texas employees and had incorporated in Texas a mere "sixteen days before filing suit").

While this District cannot claim to have any particularized interest in this case, the Southern District of New York has a strong local interest in resolving this dispute between its residents. This factor also points strongly towards transfer.

### 2. The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral. A proposed transferee court's "less congested docket" and "ab[ility] to resolve this dispute more quickly" is a factor to be considered. *Hoffmann-La Roche*, 587 F.3d at 1336. However, this factor is the "most speculative." *Genentech*, 566 F.3d at 1347. Here, the median time to disposition by trial in the two districts is not significantly different: 25.1 months in this District, and 29.9 months in the Southern District of New York it is 29.9 months. (Carraway Decl., ¶ 27, Ex. AA.) Further, the Federal Circuit has confirmed that time to trial due to docket congestion is not important for an entity such as DietGoal that does not practice the patent. *In re Morgan Stanley*, 417 Fed. App'x 947, 950 (Fed. Cir. Apr. 6, 2011) (ordering transfer to SDNY). For these reasons, the docket congestion factor is neutral here. The other public factors are neutral as well: both districts are equally capable of applying federal law, and no conflict of law issues arise in either venue.

### C. Summary of the Factors

This case presents a perfect example of one that should have been filed elsewhere, but instead appears to have been filed here solely through improper forum shopping. Plaintiff's two

New York owners manufactured a Texas company just one day before filing its first lawsuit, and proceeded to sue in this District companies whose headquarters, witnesses, and documents are located in New York. Section 1404 exists to correct such abuses of venue.

The Southern District of New York is far more convenient for **both** parties, their witnesses, and numerous non-party witnesses, is the location of most relevant documents, has absolute subpoena power over many witnesses, and has a specific local interest in the resolution of this dispute between its residents. In contrast, this District is the location of no parties, no witnesses, no documents, and no local interest. Thus, the private and public interest factors strongly favor transfer. No factor at all favors retaining this case in this District, and any remaining factors are at best neutral. On balance, the factors show that the Southern District of New York is a clearly more convenient forum.

### IV. CONCLUSION

For the reasons set forth above, Bravo respectfully requests that the Court transfer this action to the Southern District of New York.

Respectfully submitted,

Dated: September 17, 2012  By:  */s/ J. Christopher Carraway*
J. Christopher Carraway (OR Bar No. 961723)
christopher.carraway@klarquist.com
Salumeh R. Loesch (OR Bar No. 090074)
salumeh.loesch@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
Telephone: (503) 595-5300
Facsimile: (503) 595-5301

*Attorneys for Defendant Bravo Media LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 17, 2012, a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ J. Christopher Carraway
J. Christopher Carraway

## CERTIFICATE OF CONFERENCE

On September 10, 2012, counsel for Defendant Bravo conferred by phone with Eric Buether, counsel for Plaintiff, and Plaintiff is opposed to Bravo's motion to transfer.

/s/ J. Christopher Carraway
J. Christopher Carraway